IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR HERNANDO COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

PHYLIS M. POWERS,

    Plaintiff,

vs.

CASE NO. CA 10-1441

DIVISION:

HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

    Defendant.
_____/

## COMPLAINT

Plaintiff, PHYLIS M. POWERS ("MS. POWERS"), by and through her undersigned counsel, hereby files her Complaint against the Defendant, HARTFORD INSURANCE COMPANY OF THE MIDWEST ("HARTFORD"), and as grounds therefore state as follows:

### GENERAL ALLEGATIONS

1. The amount in controversy in this action exceeds the sum of Fifteen Thousand and 00/100 ($15,000.00) Dollars, exclusive of pre-judgment interest, court costs, and attorney fees.

2. At all times relevant hereto, MS. POWERS owned real property located at 8087 Rhanbuoy Road, Spring Hill, Florida 34606.

3. At all times relevant hereto, the Defendant, HARTFORD, was and is a properly licensed insurance carrier by the State of Florida and which provided a policy of insurance to MS. POWERS.

4. In consideration of the premium paid to it, HARTFORD issued a contract of homeowner's insurance to MS. POWERS, Policy No. 55RBB457934 ("The Policy"), which was in full force and effect at the time of the loss caused by a sinkhole at the property located at 8087 Rhanbuoy Road, Spring Hill, Florida 34606 ("The Insured Property").[1] A partial copy of The Policy in effect at the time of the loss is attached as Exhibit "A" and Plaintiff has requested a certified copy of the complete policy from Defendant, which she will file as a substitute exhibit.

5. On or about July 6, 2007, The Insured Property was damaged by a sinkhole and/or sinkhole activity and MS. POWERS timely reported the loss and damage to HARTFORD.

6. Sinkhole and/or sinkhole activity is a covered peril under The Policy.

7. In response to MS. POWERS' insurance claim, HARTFORD retained the services of WRS Consulting Engineers, Inc. ("WRS"), a geotechnical engineering firm, to conduct an investigation of The Insured Property.

8. WRS conducted an investigation and confirmed that the damage to The Insured Property was caused by the presence of sinkhole activity. In its report dated September 27, 2007, WRS stated as follows "...it is our professional opinion that the distress at the subject residence has been caused by sinkhole conditions" (see page 4 of WRS' report, attached as Exhibit "B").

---

[1] Plaintiff notes that her mother, Eleanor Gianini, is also listed as an insured under The Policy. However, Eleanor Gianini was deceased prior to the loss and HARTFORD was requested to remove her name fro the policy prior to the loss.

2

9.  In its report, WRS also recommended a remediation plan for The Insured Property. As part of its remediation program, WRS recommended subsurface grouting as the proper subsurface repair (see attached Exhibit "B", page 4).

10. By letter dated November 12, 2007, HARTFORD notified MS. POWERS of the investigation and WRS' recommendations (see attached Exhibit "C").

11. Further, HARTFORD provided an estimate of above-ground or "cosmetic" damages to The Insured Property (see attached Exhibit "D"). Based on its estimate, HARTFORD issued payment to MS. POWERS in the amount of $16,420.46 for the Actual Cash Value of her loss, less the policy deductible. The payment was originally issued on June 4, 2008 and later reissued on June 18, 2009 (see attached Composite Exhibit "E").

12. Thereafter, Dennis James, a contractor with Triad Consulting Group, retained by MS. POWERS, conducted an investigation of The Insured Property on June 27, 2008 and determined that the cosmetic damages to The Insured Property were actually in an amount far greater than what HARTFORD estimated. Mr. James' estimate was provided to HARTFORD on July 29, 2009 and HARTFORD was aware of MS. POWERS' dispute with its position at that time (see attached Composite Exhibit "F").

13. On February 23, 2009, WRS performed an additional site visit to inspect the block retaining wall surrounding The Insured Property. WRS issued a second report on March 2, 2009 (see attached Exhibit "G").

14. In its March 2, 2009 report, WRS stated that the cracks to the retaining wall were not structural in nature and recommended only cosmetic repairs (see attached Exhibit "G").

15. Based upon its estimate of the cosmetic damages to the retaining wall (see attached Exhibit "H"), on April 14, 2009, HARTFORD issued an additional payment to MS. POWERS in the amount of $2,461.99 for cosmetic repairs to the retaining wall, later reissued on May 8, 2009 (see attached Composite Exhibit "I").

16. Because she disputed HARTFORD'S position regarding necessary subsurface and above ground repairs to her home and property, MS. POWERS notified Hartford that she wished to participate in the Department of Financial Services' Neutral Evaluation program, pursuant to Florida Statute §627.7074.

17. On October 29, 2009, the Neutral Evaluator issued his report (see attached Exhibit "J").

18. In the October 29, 2009 Report, the Neutral Evaluator stated that the Insured Property would need to be remediated by injection of both cement grout and, in addition, that full perimeter underpins should be installed to provide further stabilization of the foundation and to prevent further damage. He also determined that structural damage repairs to the home would cost $38,530.00 (see attached Exhibit "J").

19. HARTFORD did not agree to make repairs or pay structural damages and repairs as recommend by the Neutral Evaluator, nor has it paid the ACV of "cosmetic" repairs determined by Dennis James as provided to it before Neutral Evaluation.

20. Due to MS. POWERS' concerns with the propriety of the subsurface repair program recommended by HARTFORD and WRS, MS. POWERS retained the services

of Michael Biller, a structural engineer with Billerreinhart Structural Group, Inc. ("Billerreinhart"), to provide a second opinion of the needed structural repairs following Neutral Evaluation.

21. Mr. Biller conducted a Structural Site Investigation on February 17, 2010, and prepared a report for MS. POWERS regarding the damage to The Insured Property and repairs needed to support the existing structure over unstable subsurface conditions. (A copy of Billerreinhart's report is attached as Exhibit "K").

22. In that report, Mr. Biller recommended underpinning both the interior and exterior walls on the property as the proper method of repair in order to return the foundation to its pre-loss structural integrity. Specifically, Mr. Biller's report states:

> "[Billerreinhart] believes that supporting an existing structure over such unstable subsurface conditions requires the existing foundation structures to be supported on sound limerock as opposed to the unstable soil overburden...[Billerreinhart] believes that the existing soil-bearing foundation system is no longer appropriate given the site's known unstable subsurface conditions. The purpose of the underpinning procedure is to restore the foundations' load bearing capacity by converting them from soil bearing structures to pile-supported structures."

(See attached Exhibit "K", page 7).

## COUNT I – DECLARATORY ACTION

23. MS. POWERS adopts and incorporates paragraphs 2-21 as if restated fully herein.

24. This is an action for declaratory judgment filed pursuant to Chapter 86 of the Florida Statutes.

25. This action is filed for the purpose of determining an actual controversy between MS. POWERS and HARTFORD.

26. HARTFORD, based on WRS' report, has taken the position that the proper subsurface repair in order to restore and stabilize The Insured Property is to inject compaction grouting into the ground beneath The Insured Property (see attached Exhibit "B").

27. However, both the Neutral Evaluator and the expert retained by MS. POWERS, Billerreinhart, has concluded that the stabilization method proposed by WRS and HARTFORD will not stabilize and repair The Insured Property. Instead, both the Neutral Evaluation and Billerreinhart have determined that underpinning of the property is necessary, in whole or in part.

28. As a result of the facts set forth above, a dispute has arisen which has left MS. POWERS insecure, uncertain, and in doubt with respect to her rights, status of other equitable or legal responsibilities, to wit: whether HARTFORD has failed to acknowledge and agree to pay MS. POWERS for proper subsurface repairs based upon its position that grouting is sufficient to repair the land beneath The Insured Property.

29. There exists a bonafide, actual, present, and practicable need for the declaration of coverage since HARTFORD has failed and/or refused to agree to pay the insurance proceeds due and owing MS. POWERS which are necessary to properly stabilize and repair the subsurface conditions and repair the structure at The Insured Property and to prevent further damage.

30. There exists a present, ascertained, and ascertainable state of facts concerning the rights and obligations of both MS. POWERS and HARTFORD.

31. The rights and obligations of both MS. POWERS and HARTFORD under The Policy are dependent upon the facts and law applicable to the facts effecting coverage under The Policy.

32. The Policy provides coverage for sinkhole loss as follows:

> We insure for direct physical loss to property covered under Section I caused by "sinkhole loss", including the costs incurred to:
>
> 1. Stabilize the land and building; and
> 2. Repair the foundation;
>
> in accordance with the recommendations of the engineer who verifies the presence of "sinkhole loss" in compliance with Florida sinkhole testing standards and in consultation with you.

(See attached Exhibit "A").

33. MS. POWERS has an actual, present, adverse, and antagonistic interest in the subject matter described herein. Further, HARTFORD has refused to agree to stabilize the land and building and repair the foundation "in consultation with [Ms. Powers]".

34. Plaintiff, PHYLIS M. POWERS, respectfully seeks a declaration that:

A. The repair plan proposed by WRS and adopted by HARTFORD is inadequate and will not properly restore The Insured Property to its pre-loss structural condition.

B. That either proposed repair plan prepared by the Neutral Evaluator or Billerreinhart will properly repair and restore The Insured Property.

C. That HARTFORD must agree to tender the insurance proceeds necessary to properly repair The Insured Property based on the proper subsurface repair and stabilization plan.

D.   Such further declaration by the Court as is supported by the law and the facts.

E.   Grant a jury trial on all issues so triable.

**WHEREFORE**, the Plaintiff, PHYLIS M. POWERS, seeks a declaration of the parties' rights and duties under The Policy and, to the extent this impacts on her recovery under The Policy, a recovery of her taxable costs and reasonable attorney's fees under Florida Statute §627.428 against HARTFORD.

### COUNT II - BREACH OF CONTRACT

35.  MS. POWERS re-alleges and incorporates paragraphs 1 – 21 set forth above as if fully restated herein.

36.  This is an action for damages for breach of insurance contract against HARTFORD.

37.  The estimates of "cosmetic" or above-ground damages prepared by HARTFORD failed to include all damages to The Insured Property caused by the confirmed sinkhole activity, utilized low unit prices, withheld excessive depreciation, wrongfully depreciated sales tax, and otherwise undervalued the loss. As a result, HARTFORD'S payments have unpaid Plaintiff's claim.

38.  The "cosmetic"/above ground damages to MS. POWERS" home exceed those estimated and paid by HARTFORD.

39.  HARTFORD has failed and/or refused to properly investigate and/or evaluate and/or pay the full extent of the Actual Cash Value of cosmetic damages to The Insured Property in consultation with MS. POWERS and in breach of The Policy.

40. MS. POWERS has suffered damage to her property as a result of sinkhole and/or sinkhole activity underneath The Insured Property.

41. MS. POWERS has requested that HARTFORD tender the full Actual Cash Value (ACV) payment for all cosmetic damages to The Insured Property which were caused by sinkhole and/or sinkhole activity; HARTFORD has failed and/or refused, and continues to fail and/or refuse to pay the full amount of the ACV of the cosmetic damages despite knowing it is required to do so.

42. MS. POWERS has done and performed all those matters and things properly required of her under the insurance policy, or alternatively, has been excused from performance by the representations and/or conduct of HARTFORD.

43. Based on the actions and omissions outlined above, HARTFORD has thereby breached its contract of insurance with MS. POWERS.

44. As a direct result of HARTFORD'S breach of its insurance contract, MS. POWERS has lost the full value and benefit of her real property and continues to suffer such loss.

45. As a direct result of HARTFORD'S conduct, MS. POWERS was required to become obligated for attorney's fees and costs in connection with the prosecution of this action and Florida Statute §627.428 provides for the payment of attorneys fees in the event of such obligation and need.

**WHEREFORE**, the Plaintiff, PHYLIS M. POWERS, prays this Honorable Court order HARTFORD INSURANCE COMPANY OF THE MIDWEST to pay, in full, her contractual and compensatory damages under the contract, pre-judgment interest, the

costs of this action, attorney's fees pursuant to Florida Statute §627.428, and to grant such other and further relief as this Court may deem just and proper.

Further, Plaintiff requests a trial by jury on all issues so triable.

DATED: 5/03/10

DANAHY & MURRAY, P.A.

MATTHEW R. DANAHY, ESQUIRE
Florida Bar No. 606693
SHELLEY B. CRIDLIN, ESQUIRE
Florida Bar No. 0022451
901 W. Swann Avenue
Tampa, Florida 33606
(813) 258-3600
(813) 258-3321 (fax)
Attorney for Plaintiffs