UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PHYLIS M. POWERS,

      Plaintiff,

v.                                                               Case No. 8:10-cv-1279-T-24 AEP

HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

      Defendant.
_____/

## **ORDER**

This cause comes before the Court on Defendant's Motion to Dismiss Count I. (Doc. No. 8). Plaintiff opposes the motion. (Doc. No. 11). As explained below, the motion is denied.

## **I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right

to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II. Background

Plaintiff alleges the following in her complaint (Doc. No. 2): Defendant issued Plaintiff a homeowners' insurance policy that was in effect in July of 2007 when sinkhole damage to her property occurred. Since sinkhole damage is covered under the policy, Defendant retained WRS Consulting Engineers, Inc. ("WRS"), a geotechnical engineering firm, to investigate the damage to the property. In September of 2007, WRS confirmed that the property was damaged by sinkhole activity and recommended subsurface grouting as the proper subsurface repair. Based on WRS's recommendation, Defendant issued Plaintiff a payment in June of 2008 in the amount of $16,420.46 for the above-ground/cosmetic damage to her property caused by the sinkhole.

Thereafter, in June 2008, Plaintiff retained Triad Consulting Group ("TCG") to investigate the property damage. TCG determined that the cosmetic damage to the property was far greater than the amount estimated by Defendant. In July of 2008, Plaintiff provided Defendant with TCG's estimate, and in response, Defendant had WRS perform an additional site visit to inspect the block wall surrounding the property. Based on this second investigation in February of 2009, WRS concluded that the cracks in the retaining wall were not structural, and therefore, WRS recommended only cosmetic repairs. As a result, Defendant issued Plaintiff an additional payment of $2,461.99 in April of 2009 for these cosmetic repairs.

In response, Plaintiff notified Defendant that she wanted to participate in the Department of Financial Services' Neutral Evaluation program, pursuant to Florida Statute § 627.7074.[1] In October of 2009, the Neutral Evaluator determined that the property would need to be remediated by injection of cement grout and that full perimeter underpins should be installed to provide further stabilization of the foundation and prevent further damage. The Neutral Evaluator determined that structural damage repairs to the property would cost $38,530.00.

Thereafter, Plaintiff retained an engineer with Billerreinhart Structural Group, Inc. ("BSG") to provide a second opinion following the Neutral Evaluation. In March of 2010, BSG recommended underpinning both the interior and exterior walls on the property as the proper method of repair. The estimate cost of BSG's repair plan exceeds $400,000.

On May 3, 2010, Plaintiff filed suit against Defendant in state court, which Defendant removed to this Court based on diversity jurisdiction. In her complaint, Plaintiff asserts two claims: Count I for a declaratory judgment under Chapter 86 of the Florida Statutes[2] regarding the proper repair plan for the property and Count II for breach of contract regarding Defendant's alleged failure to pay for the full extent of the cosmetic damages to the property. In response, Defendant filed the instant motion to dismiss Count I.

---

[1] Florida Statute § 627.7074 provides an insured that has suffered sinkhole damage the right to participate in a non-binding, neutral evaluation program, wherein a neutral evaluator determines whether sinkhole damage occurred and recommends the need for, and estimate of the cost of, repair.

[2] Chapter 86 of the Florida Statutes is the Florida Declaratory Judgment Act, which is substantive law. See Marco Island Cable, Inc.v . Comcast Cablevision of the South, Inc., 509 F. Supp.2d 1158, 1160 (M.D. Fla. 2007)(citations omitted).

**III.  Motion to Dismiss**

Defendant moves to dismiss Count I, arguing that (1) purely factual matters are not appropriate for resolution in a declaratory action, and (2) Plaintiff has failed to adequately allege the need for a declaratory judgment.  As explained below, the Court rejects these arguments.

**A.  Factual Matters**

Defendant argues that Plaintiff's claim for a declaratory judgment should be dismissed, because purely factual matters are not appropriate for resolution in a declaratory action.  In support of this contention, Defendant cites Florida Supreme Court cases from the 1950s and 1960s, including <u>Columbia Casualty Co. v. Zimmerman</u>, 62 So. 2d 338 (Fla. 1952).  However, those cases must be considered in light of a more current Florida Supreme Court case, <u>Higgins v. State Farm Fire & Casualty Co.</u>, 894 So. 2d 5 (Fla. 2005), in which the Florida Supreme Court explicitly receded from <u>Columbia Casualty</u> and its narrow application of the declaratory judgment statutes.

In <u>Higgins</u>, the issue before the Florida Supreme Court was whether Florida's declaratory judgment statutes authorize declaratory judgments as to insurance policy obligations to defend and coverage for indemnity when it is necessary to decide issues of fact in order to determine the declaratory judgment.  <u>See</u> <u>id.</u> at 9.  The <u>Higgins</u> court concluded that the declaratory judgment statutes do authorize such relief, and the court explicitly receded from its prior opinion in <u>Columbia Casualty</u> and the cases which relied upon <u>Columbia Casualty</u> to the extent that such decisions conflicted with its decision in <u>Higgins</u>.  In explaining its conclusion, the <u>Higgins</u> court stated:

> [T]he Court's use of declaratory judgments has evolved since this Court's decision over fifty years ago in <u>Columbia Casualty</u>.  We conclude that in this decision we

4

should give effect, for use in insurance coverage disputes, to all of the sections of Florida's declaratory judgments statutes and not limit the application of those statutes in these disputes to only the one section relied upon in Columbia Casualty. We believe that declaratory judgments are and can increasingly be a valuable procedure for the resolution of insurance coverage disputes to the benefit of insurers, insureds, and claimants.

\* \* \*

We agree . . . [that Florida Statute] sections 86.011(2)[3], 86.051[4], 86.071[5], and 86.101[6] support the conclusion that an insurer may pursue a declaratory action which requires a determination of the existence or nonexistence of a fact upon which the insurer's obligations under an insurance policy depend. . . . Therefore, we now conclude that the Columbia Casualty decision was too limiting of the scope of section 86.021[7] when read [in conjunction with the rest of Chapter 86]. . . . [T]he Legislature clearly contemplated fact-finding in declaratory actions. Section 86.071 expressly provides a mechanism for jury trials when an action under the Act concerns the determination of an issue of fact. . . . [F]inally, section 86.101 clearly provides that chapter 86 is to be "liberally administered and construed."

\* \* \*

[W]hile the decisions by both the district courts and this Court have relied upon or

---

[3]Section 86.011(2) provides, in relevant part, that a court may render a declaratory judgment on the existence or nonexistence of any fact upon which the existence or nonexistence of a right does or may depend, whether such right now exists or will arise in the future.

[4]Section 86.051 provides that the specific enumerations of a court's power to issue declaratory judgments set forth in other sections of Chapter 86 do not limit the exercise of the court's general powers conferred in § 86.011.

[5]Section 86.071 provides, in pertinent part, that when a declaratory action "concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their submission to a jury."

[6]Section 86.101 provides that Chapter 86 is "substantive and remedial. Its purpose is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed."

[7]Section 86.021 provides, in relevant part, that any person who may be in doubt about his or her rights under a contract may have determined any question of construction or validity arising under such contract, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

5

> reaffirmed the precedent of Columbia Casualty, in more recent years, the district courts and this Court have not rigidly adhered to the narrow application of the declaratory judgment statutes in Columbia Casualty.

Higgins, 894 at 10, 12, 13 (footnotes omitted).

Additionally, the Higgins court recognized that there is a "need to have the declaratory judgment statutes construed so that declaratory judgment actions are an available procedure to resolve insurance coverage controversies." Id. at 14. The court stated that "it is illogical and unfair to not allow insureds and insurers to have a determination as to whether coverage exists on the basis of the facts underlying a claim against an insurance policy." Id. at 15.

Thus, based on Higgins, issues involving the rights and obligations under an insurance policy come within the purpose of the declaratory judgment statutes, which is "to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations." Fla. Stat. § 86.101. In its motion to dismiss, Defendant acknowledges the existence of the Higgins case, but it argues that Higgins is inapplicable because Higgins is limited to whether an *insurer* can pursue a declaratory action and does not speak on the issue of whether an *insured* can pursue such an action. This Court is not persuaded by Defendant's argument and narrow reading of Higgins, and instead, the Court believes that Higgins has a broader application in insurance disputes.

Defendant also argues that declaratory relief is not warranted because there is no issue regarding whether the damage to Plaintiff's property is covered under the policy, as Defendant is not contesting coverage. This argument misses the mark, as Plaintiff points out that she is seeking a declaration regarding the proper method of repairing her property that she is entitled to under the policy. Furthermore, the existence of factual issues underlying the ultimate

determination does not preclude declaratory relief, as § 86.071 provides a method for making factual determinations. Accordingly, the Court rejects Defendant's argument that Plaintiff's claim for a declaratory judgment should be dismissed due to the presence of factual matters that must be resolved.

### B. Sufficiency of Allegations

Next, Defendant argues that Count I should be dismissed because Plaintiff has failed to adequately allege the need for a declaratory judgment. Specifically, Defendant cites May v. Holey, 59 So. 2d 636, 639 (Fla. 1952), which sets forth the elements of a declaratory judgment action, and argues that Plaintiff has failed to adequately allege two elements–(1) that all of the antagonistic and adverse interests are before the court, and (2) that the relief she seeks is not merely the giving of legal advice or the answer to questions propounded by curiosity. The Court rejects this frivolous argument, as there is no indication that there are any other interested parties or that this claim is based on curiosity.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion to Dismiss Count I (Doc. No. 8) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 22nd day of July, 2010.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record